UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ELIZABETH LANZO o/b/o J.I.C.,

                Plaintiff,

v.                              **DECISION AND ORDER**
                                              10-CV-271S
MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

1.     Plaintiff challenges an Administrative Law Judge's ("ALJ") decision that her minor son, JIC, is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that JIC has been disabled from April 1, 2007 to October 23, 2009, due to attention deficit/hyperactivity disorder ("ADHD") and anxiety disorder, and is therefore entitled to payment of Supplemental Security Income ("SSI") under the Act.

2.     Plaintiff filed the instant application for SSI benefits on JIC's behalf on June 11, 2007. Her application was denied. A hearing was then held before Administrative Law Judge ("ALJ") Timothy M. McGuan on October 8, 2009, at which Plaintiff and JIC appeared and claimant's mother testified. The ALJ considered the case *de novo*, and on October 23, 2009, issued a decision denying Plaintiff's application for SSI. The Appeals Council denied Plaintiff's request for review on February 18, 2010. Plaintiff filed the current civil action on April 1, 2010, challenging Defendant's final decision.[1]

---

[1] The ALJ's October 23, 2009 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

3. On September 8, 2010, Defendant filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. On September 9, 2010, Plaintiff followed suit and filed her own Motion for Judgment on the Pleadings pursuant to Rule 12(c). For the reasons set forth below, Defendant's motion is granted and Plaintiff's motion is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § § 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support

the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity and Reconciliation Act of 1996 ("the 1996 Act"), which amended the statutory standard for children seeking SSI benefits. See 42 U.S.C. § 1382c. In relevant part, the 1996 Act provides that an "individual under the age of 18 shall be considered disabled . . . if [he or she] has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(I).

7. Regulations promulgated by the Social Security Administration ("SSA") define "marked and severe functional limitations" in terms of "listing-level severity," *i.e.*, an impairment that meets, medically equals, or functionally equals the severity of an impairment in the listings. 20 C.F.R. § 416.926a(a). In accordance with the regulations, a child's functional limitations are evaluated in six broad areas or domains of functioning: (I) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. See 20 C.F.R. § 416.926a(b).

8.      The Commissioner has established a three-step sequential evaluation process to determine whether a child is disabled as defined under the Act.  See 20 C.F.R. § 416.924.  Specifically, the child must demonstrate that: (1) he or she is not working; (2) he or she has a "severe" impairment or combination of impairments; and (3) his or her impairment or combination of impairments is of listing-level severity, in that it meets, medically equals, or functionally equals the severity of a listed impairment.  See 20 C.F.R. § 416.924.  A child's medically determinable impairment or combination of impairments "functionally equals" a listed impairment if it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.  See 20 C.F.R. § 416.926a.

9.      Applying the sequential evaluation in the instant case, the ALJ found: (1) JIC had not engaged in any substantial gainful activity since June 11, 2007 (R. at 11);[2] (2) JIC has ADHD and anxiety disorder, which constitute severe impairments under the Act  (R. at 11); and (3) JIC's impairments did not meet or medically equal any listed impairments (R. at 11).  In addition, the ALJ evaluated JIC's mental impairments to determine if they were "functionally equivalent" to a listed impairment. (R. at 11-18.) The ALJ noted that the evidence revealed that JIC had less than marked limitation in attending and completing tasks and no limitations in any other domain and therefore concluded that JIC's impairments were not functionally equal to a listed impairment. (R. at 11-18.) Based on the record, the ALJ ultimately determined that JIC was not under a disability, as defined by the Act, at any time from the date the application was filed, through the date of the decision, October 23, 2009.  (R. at 19.)

---

[2] Citations to the underlying administrative record are designated as "R."

10. Plaintiff argues that the ALJ's determination that JIC had no marked limitations in his ability to acquire and use information, attend and complete tasks, and interact and relate with others is not supported by substantial evidence and that the ALJ did not provide sufficient explanation in his discussion of these three domains. Plaintiff specifically points to the absence of any medical expert testimony, the ALJ's failure to discuss the effects of a structured or highly supportive environment, and the need to give greater consideration to the information provided by JIC's mother. Moreover, Plaintiff contends that the ALJ improperly disregarded the testimony of the claimant's mother.

11. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error. The decision contains an adequate discussion of the evidence supporting the ALJ's determination that JIC was not disabled. Additionally, the ALJ was not required to find the claimant's mother's testimony credible.

12. Considering first the domain of acquiring and using information, this domain considers how well a claimant can "acquire or learn information, and how well [he] use[s] the information . . . learned." 20 C.F.R. § 416.926a(g). As to this domain, the ALJ found that there was no evidence that JIC had any problems acquiring or using information. The ALJ specifically noted that JIC passed the first grade, even though he missed over 25 days from school. Plaintiff points out that the ALJ did not consider whether JIC could exhibit the abilities he showed in an educational environment if he was removed from his teachers' support.

Plaintiff is correct that "the Commissioner's regulations require the ALJ to consider the effects of a structured or highly supportive setting," including, if the child's symptoms are brought under control by the environment, "the claimant's functioning outside of the

highly structured setting." However, the regulation does not require the ALJ "to explicitly discuss his consideration of these factors in the decision." <u>Watson ex re. K.L.W. v. Astrue</u>, No. 07-CV-6417T, 2008 WL 3200240, at *4-*5 (W.D.N.Y. 2008) (quoting <u>Turner v. Barnhart</u>, No. 05-3509, 2006 WL 2460876, at *2 (E.D. Penn. Aug. 21, 2006)). In that regard, and as a preliminary matter, it is undisputed that the school did not label JIC as having a disability. In fact, in August 23, 2007, in response to a request for information concerning JIC's school needs, the school replied that there were no records to forward because JIC had not been identified as a child with a disability. JIC was only placed in a speech improvement class so that he could improve his language skills. (R. at 84.)[3] This is unlike a case in which a claimant is placed in a highly structured environment like a self-contained day treatment program. <u>See</u> <u>Smith v. Massanari</u>, No. 00-CV-0402C, 2002 WL 34242375, at *6 (W.D.N.Y. Mar. 17, 2002). In <u>Smith</u>, claimant's teachers actually recommended that the child continue in a special treatment program because of his poor academic performance, and an individualized education program authorized the same. Here, by contrast, claimant performed at or slightly below grade level. (R. at 77, 86.)

That this level of functioning continued outside the school-context is evidenced by the claimant's own mother, who stated that while on medication JIC was focused and able to pay attention without problems. (R. at 26.) Thus, it was not the school-structure which helped stabilize claimant, but the medication he was taking. The ALJ's review and citation to specific parts of claimant's medical treatment record support this conclusion. For example, while on medication claimant no longer experienced insomnia. (R. at 13.) It is

---

[3] It is unclear whether JIC's dominant language is Spanish or English. (R. at 76, 85.)

also supported by the fact, noted by the ALJ, that claimant passed the first grade despite missing several weeks of school. The fact that claimant was able to succeed in this task, despite being outside the structured school environment for 25 days, and combined with the fact that claimant was not receiving any type of extraordinary assistance while at school, amply supports the ALJ's determination on the first domain.

13. In considering a child's limitations in the domain of attending and completing tasks, the Commissioner considers the claimant's ability to "focus and maintain [his] attention, and how well [he can] begin, carry through, and finish . . . activities, including the pace at which [he] perform[s] activities and the ease with which [he] change[s] them." 20 C.F.R. § 416.926a(h). The ALJ concluded that JIC had less than a marked limitation in this domain based on the second grade teacher's report that the claimant experienced difficulty concentrating and became easily distracted, but was nevertheless able to complete his homework and do well in school. Plaintiff asserts that the ALJ failed to consider the entirety of the record, which demonstrated JIC's continuing difficulties in school and in paying attention, as well as oppositional behavior issues. Specifically, Plaintiff directs this Court to the fact that both claimant's teachers noted that he could be easily distracted in a group setting or when working by himself. (R. at 78, 87.)

Nevertheless, this Court finds that the ALJ's discussion was sufficient. The ALJ is not required to discuss or analyze every piece of evidence presented. See Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").

Although this Court agrees that JIC does have a problem in this domain, the ALJ's determination that this problem does not rise to the level of a marked limitation is supported by substantial evidence. One of JIC's teachers recorded that JIC had only a slight or no problem in 10 out of the 13 categories in this domain. (R. at 87).[4] JIC's other teacher left two of the 13 categories blank, but, out of the remaining 11, marked 7 as being only a slight or no problem. (R. at 78.) This Court further observes that despite claimant's alleged problems in finishing tasks, this did not inhibit him in performing adequately in school, and even excelling in certain subjects. (R. at 61.) Mindful that this Court must give the ALJ's determination considerable deference, this Court concludes that there is substantial evidence to support the ALJ's finding of a less than marked limitation in this domain.

       14.    In considering a child's limitations in the domain of interacting and relating with others, the Commissioner weighs a claimant's ability to "initiate and sustain emotional connections with others, develop and use the language of [his] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). Here, the ALJ simply found that there was "no evidence in the record that the claimant was unable to appropriately interact with others." Plaintiff asserts that the ALJ should have credited the mother's testimony that JIC had few friends and that friends avoided him due to outbursts and an inability to control his emotions. However, as discussed further below, the ALJ properly determined that the

---

[4] The categories listed on the questionnaire included, among others, the following: ability to pay attention when spoken to directly, focusing long enough to finish assigned activity or task, waiting to take turns, organizing own things or school materials, completing class/homework assignments, and working without distracting self or others. (R. at 87.)

mother's testimony was not credible. Absent this testimony, the ALJ was correct in finding that there was no evidence showing a marked limitation in this domain, and Plaintiff, in supporting memoranda, identifies nothing except the mother's written statement and hearing testimony.

Supporting the ALJ's conclusion, the teachers' questionnaires show that, with some exceptions, claimant "is well adjusted to the classroom and other students" and has no problems functioning in this domain. (R. at 79, 88.) The mother's own written testimony shows that claimant was able to make and maintain friendships. (R. at 114.) The only impairments listed by her were an inability to play team sports and that some kids avoided claimant because he was overly emotional. (R. at 114.) Considering the record as a whole, there is thus substantial evidence supporting the ALJ's determination that claimant did not suffer from an inability to appropriately interact with others such that he would have a marked limitation in this domain.

15.  Turning to the matter of the ALJ's assessment of the credibility of the mother's testimony, the ALJ found that "the allegations of disabling impairments made by the claimant's mother are not fully credible in the light of the lack of clinical evidence to support them." (R. at 14.) The ALJ further noted that "claimant's mother appears to exaggerate her son's symptoms." (R. at 14.) In making a determination as to a claimant's disability, an ALJ must consider subjective statements regarding a claimant's symptoms. See Sweatman v. Callahan, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998). In so doing, an ALJ retains discretion to evaluate the credibility of the subjective statements. See Marcus v. Califano, 615 F.2d 23, 27-28 (2d Cir. 1979). "A finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit

intelligible plenary review of the record." Bowen, 859 F.2d at 260-61.  To this end, SSR 96-7p requires that "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).

Relevant to the case here, "[t]he Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and activities during the relevant period."  F.S. v. Astrue, No. 1:10-CV-444 (MAD), 2012 WL 514944, at *20 (citing Howe-Andrews v. Astrue, No. CV-05-4539, 2007 WL 1839891, at *10 (E.D.N.Y. June 27, 2007).  Here, the ALJ reviewed the claimant's medical treatment records and then noted that despite the mother's description of disabling impairments, there was no clinical evidence that supported her statements.  This made her testimony less than fully credible.  The ALJ gave great weight to one of the teacher's questionnaires, and viewed the mother as exaggerating JIC's symptoms.

In this Court's judgment, although the ALJ's assessment of the mother's credibility was brief, in the context of this case, it was sufficient.  Contrary to Plaintiff's supporting memorandum, the hearing testimony did not reflect problems by claimant in making friends or that friends avoided him because of his emotional outbursts. (R. at 25-30.)  The written statements similarly showed that JIC had friends his own age, could make new friends, and got along with adults and school teachers.  The only listed impairment was an inability to play team sports and that "[s]ometime other kids avoid [claimant] because he is overly emotional at times."  (R. at 114.)  The dearth of both hearing and written testimony by

claimant's mother naturally limits the material as to which the ALJ must make credibility determinations. For example, although the SSA Function Report completed by Ms. Lanzo specifies that JIC is unable to keep himself busy, finish things he starts, work on arts and crafts projects, complete homework, and complete chores, no additional information expanding on these form-standard descriptions is provided, nor was such information disclosed at the hearing. (R. at 116.)[5] Given the brevity of the relevant testimony, the ALJ's determinations were similarly, and suitably, brief.

Thus, this Court finds that it was reasonable for the ALJ to conclude that JIC was not disabled because there is no evidence demonstrating that JIC had marked limitation in any domain of functioning.

16. Having reviewed the administrative record, this Court finds that substantial evidence supports the ALJ's decision that JIC was not disabled. The ALJ thoroughly examined the record and afforded appropriate weight to all of the evidence. Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 4) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is DENIED.

---

[5]The SSA Function Report asks whether a child's ability to pay attention and stick with a task is limited. If an applicant checks "Yes" he or she is then directed to place checks in a Yes/No column alongside five attention-related abilities, including the ability to keep busy, finish things claimant starts, and completing homework and chores on time. Plaintiff checked "No" for each of these.

     FURTHER, that the Clerk of Court is directed to close this case.

     SO ORDERED.

Dated:  March 11, 2012
         Buffalo, New York

                                          <u>/s/William M. Skretny</u>
                                          WILLIAM M. SKRETNY
                                                Chief Judge
                                      United States District Court